IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Horter Investment Management, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:15-CV-477 |
| vs. | ) ) | |
| Jeffrey Cutter, et al., | ) ) ) | |
| Defendants. | ) | |

O R D E R

This matter is before the Court on Defendant Ryan Borer's motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Doc. Nos. 38 & 48). For the reasons that follow, Defendant's motions to dismiss are not well-taken and are **DENIED.**

I. Background

This lawsuit arises out the alleged breach of a non-competition agreement between Plaintiff Horter Investment Management, LLC ("Horter") and Defendant Jeffrey Cutter. Defendant Ryan Borer, who, along with Cutter, is a principal in a new business venture allegedly competing against Horter, contends that he is not subject to personal jurisdiction in Ohio. Where, as in this case, the court rules on a Rule 12(b)(2) motion without benefit of an evidentiary hearing, the court must construe the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996).

1

Horter is an Ohio limited liability company with its principal place of business located in Cincinnati, Ohio. Second Amended Complaint ¶ 1. Defendant Jeffrey Cutter is a citizen of the State of Massachusetts. Id. ¶ 2. Defendant PCM Advisory, d/b/a/ Precision Capital Management ("Precision"), is Texas limited liability company with its principal place of business in Coppell, Texas. Id. ¶ 3. Defendant Ryan Borer is a citizen of the State of Texas. Id. ¶ 4. The Court has subject matter jurisdiction in this case because Plaintiff and each of the Defendants are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

Horter is an investment advisor and is registered as such with the Securities and Exchange Commission. Second Amended Complaint ¶ 9. Horter sustains and grows its business by entering into Investment Adviser Representative ("IAR") agreements with individuals to provide investment management services using Horter's investment platform. Id. ¶ 10; Second Amended Complaint, Ex. A, IAR Agreement § 1. The IAR remains an independent contractor under the agreement. Id. The IAR agreement contains a non-compete clause in which the IAR agrees, for a period of twelve months after the termination of the agreement, not to solicit Horter's employees or contractors. The non-compete clause also prohibits the IAR from establishing, directly or indirectly, his own registered investment adviser firm for a period of twelve months after the termination of the agreement. IAR Agreement § 3. Cutter began providing investment adviser services on behalf of Horter in 2011. Second Amended Complaint ¶¶ 13, 15. Cutter periodically executed new and updated IAR agreements, most recently in March 2014. Id. ¶ 16; Second Amended Complaint Ex. A. This agreement contains the non-compete clause just described.

Horter alleges that in late 2014, Cutter began soliciting another Horter IAR, Pete Lang, to leave Horter and establish their own investment advisory firm. Second Amended Complaint ¶ 20. Horter alleges further that in January 2015, before terminating his relationship with Horter, Cutter, Lang, and Borer established Precision to provide investment advisory services. Id. ¶ 21. Additionally, Horter alleges that Cutter retained one of its own recruiting contractors, 3 Mentors, Inc., to assist in recruiting Horter's IAR's to Precision. Id. Cutter terminated his relationship with Horter on February 4, 2015 and formally signed on with Precision on February 5, 2015. Id. ¶¶ 23, 24.

Horter alleges that Borer and Precision were aware of Cutter's non-compete agreement and, therefore, Borer agreed to hold himself out as Precision's owner and/or managing officer until Cutter's non-compete clause expired. Second Amended Complaint ¶¶ 27, 28. Nevertheless, Horter alleges that Cutter controls and manages Precision. Id. ¶ 29.

Horter alleges that Precision, Borer, and Cutter host conferences and seminars for the purpose of recruiting Horter's IAR's. Second Amended Complaint ¶ 31. As a result of their recruitment efforts, between March 20, 2015 and April 6, 2015, four of Horter's IAR's terminated their relationship with Horter and joined Precision, taking some $72,000,000 in assets and nearly $2,000,000 in annual fees with them. Id. ¶¶ 32, 33. Between April 2015 and September 2015, another nineteen IAR's left Horter and signed on with Precision. Id. ¶ 36. All told, these IAR's transferred almost $235,000,000 in assets and $6,000,000 in fees to Precision. Id. ¶ 37.

Horter filed suit against Cutter, Lang, and Precision in the Hamilton County Court of Common Pleas in June 2015. The original complaint asserted claims against the

defendants for breach of contract, breach of fiduciary duty, tortious inference with contract, and tortious inference with business relations. Defendants removed the complaint from state court in July 2015 on the basis of diversity jurisdiction. Horter and Lang later agreed to voluntarily dismiss their claims and counterclaims against each other. Doc. No. 30.

Horter then filed an amended complaint (Doc. No. 31) which dropped Lang and added Borer as a defendant. The Court later ordered Horter to file another complaint to correct defective jurisdictional allegations. Doc. No. 42. The second amended complaint (Doc. No. 43) correctly establishes the Court's diversity jurisdiction and asserts claims against Cutter for breach of the non-compete clause (Count One) and breach of fiduciary duty (Count Two), against Precision and Borer for tortious interference with contract (Count Three), against all Defendants for tortious interference with business relations (Count Four).

Borer now moves to dismiss the complaint against him pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

## II. Analysis

Borer contends that he is not subject to personal jurisdiction in Ohio under Ohio's long-arm statute and that asserting jurisdiction over him in this case would in any event violate the Due Process Clause because he lacks sufficient contacts with Ohio. Horter argues that Borer is subject to personal jurisdiction in Ohio, and that the Due Process Clause is satisfied, because Borer purposefully directed tortious activities into the State of Ohio and caused tortious injury here. The Court concludes that the requirements for establishing personal jurisdiction over Borer are easily satisfied in this case.

As the plaintiff, Horter bears the burden of proving that Borer is subject to personal jurisdiction in Ohio. Air Products & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007).

The Court first notes that Horter does not contend that Borer is subject to general jurisdiction in Ohio, that is, that his contacts are continuous and systematic such that "that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." Third Nat'l Bank in Nashville v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). Accordingly, the Court must decide whether specific personal jurisdiction over Borer exists.

In a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." Id. If Borer is subject to Ohio's long-arm personal jurisdiction statute, the Court must then determine whether exercising personal jurisdiction over Borer comports with the Due Process Clause. In Bird v. Parsons, 289 F.3d 865 (6th Cir. 2002), the Sixth Circuit set forth the requirements for the proper assertion of specific personal jurisdiction by the trial court:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Id. at 874 (citing Southern Mach. Co., Inc. v. Mohasco Ind., Inc., 401 F.2d 374, 381 (6th Cir. 1968)). Horter must establish all three parts of the Mohasco test for the Court to assert personal jurisdiction over Borer. Id.; Bridgeport Music, Inc. v. Still N The Water Publ'g, 327 F.3d 472, 477 (6th Cir. 2003). Because the Court is deciding the issue of personal

5

jurisdiction without discovery or an evidentiary hearing, Horter needs only to make a prima facie showing that the Court has jurisdiction over Borer. Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co. Ltd., 91 F.3d 790, 792 (6th Cir. 1996). Additionally, the Court must construe the pleadings in the light most favorable to Horter. Id. at 793.

As an initial matter, the Court concludes that Borer is subject to personal jurisdiction under Ohio's long-arm statute because, at a minimum, the second amended complaint alleges facts showing that Borer caused "tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state[.]" Ohio Rev. Code § 2307.382(A)(6). The facts alleged show that Cutter was subject to a twelve-month non-compete clause upon the termination of his relationship with Horter in which he agreed not to establish, directly or indirectly, a competing investment advisory firm. Cutter also agreed not to solicit or recruit Horter's IAR's for a twelve-month period. Cutter, nevertheless, formed Precision with Lang and Borer while he was still under contract with Horter. It is reasonable to infer that Cutter made Borer aware of his covenant not to compete, particularly in light of the allegation that Borer was installed as the managing partner of Precision in order to circumvent the clause. Despite Borer's knowledge of Cutter's non-compete clause, he and Cutter not only established a competing advisory firm, but they conducted conferences and seminars for the sole purpose of recruiting away Horter's IAR's. And they were indeed successful in their efforts. These facts, accepted as true, are sufficient to find that Borer intentionally interfered with not only Cutter's non-competition clause, but also with the agreements of the Horter IAR's he and Cutter successfully recruited. The facts alleged, therefore, show that Borer purposefully

committed tortious acts knowing that they would cause an injury to a person in Ohio. Consequently, he is subject to personal jurisdiction in Ohio pursuant to § 2307.382(A)(6). Cf. Fern Exp. Serv., LLC v. Lenhof, No. C-130791, 2014 WL 3723883, at *3 (Ohio Ct. App. July 25, 2014)(holding that out-of-state defendant was subject to jurisdiction under § 2307.382(A)(6) where the facts alleged showed that he tortiously interfered with Ohio corporation's contractual relationship).

Borer contends that he committed the tortious acts alleged in his corporate, not individual, capacity. Borer argues, therefore, that the fiduciary shield doctrine applies and precludes the Court's assertion of personal jurisdiction over him. Generally speaking, the fiduciary shield doctrine protects a corporate officer from personal jurisdiction for actions taken in his corporate capacity. Balance Dynamics Corp. v. Schmitt Ind., 204 F.3d 683, 697 (6th Cir. 2000). However, even if, as Borer contends, he committed the alleged tortious acts in his corporate capacity, his protection under the fiduciary shield doctrine is not absolute. Id. at 698. The fiduciary shield doctrine does not apply if the corporate officer was actively and personally involved in the conduct giving rise to the claim. Id. If so, "the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; i.e., whether [he] purposely availed [himself] of the forum and the reasonably foreseeable consequences of that availment." Id.

In this case, the second amended complaint shows that Borer was personally and actively involved in the conduct giving rise to the claim. As indicated, according to the complaint, Borer held conferences and seminars for the sole purpose of recruiting away Horter's IAR's. Moreover, the complaint alleges that Cutter and Borer made Borer the managing officer of Precision for the purpose of attempting to circumvent Cutter's non-

7

compete clause. The facts show that Borer was personally and actively involved in the conduct giving rise to Horter's intentional interference with contract claim.

In addition, the facts alleged show that Borer purposefully availed himself of acting in Ohio and that it was reasonably foreseeable that his conduct would cause consequences in Ohio. Indeed, by actively recruiting Horter's IAR's, Borer had to have known that he was causing an injury to an Ohio citizen. This conclusion also satisfies the Mohasco factors cited, supra. The Court concludes that Calder v. Jones, 465 U.S. 783 (1983), controls the outcome of the Due Process inquiry. In Calder, the Court held that for purposes of personal jurisdiction, the Due Process Clause is satisfied when the defendant's intentional and tortious acts are "expressly aimed" at the forum state. Id. at 789. The Court stated that a defendant who expressly aims his tortious conduct at the forum state "must reasonably anticipate being haled into court there." Id. at 790.

Here, as in Calder, Borer purposefully directed tortious conduct to an Ohio citizen and caused substantial injury to an Ohio citizen. He, therefore, purposefully caused a consequence in Ohio. Horter's claims arise from Borer's actions that were directed at Horter in Ohio. Since the first two Mohasco factors are satisfied, an inference arises that Borer's acts have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable. Bird, 289 F.3d at 875. Exercising personal jurisdiction over Borer in Ohio would nevertheless be reasonable under Calder because, by expressly directing tortious acts at Ohio, Borer must reasonably have anticipated being haled into court here. Moreover, Horter has a substantial interest in obtaining relief in Ohio because an individual injured in Ohio should not have to go to Texas to obtain redress from a person who knowingly caused an injury in Ohio. Cf. Calder, 465 U.S. at 790 ("An individual injured in

8

California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.").

## Conclusion

The Court finds that Horter has made a prima facie showing that Defendant Borer is subject to personal jurisdiction in Ohio. Accepting the facts alleged in the complaint as being true, Borer satisfies Ohio's long-arm statute because he purposefully committed tortious acts outside of the state that caused an injury to a person within Ohio. Additionally, the Due Process Clause is satisfied because Borer expressly directed tortious conduct at Ohio and should reasonably have anticipated being called into court here.

Accordingly, Defendant Borer's motions to dismiss pursuant to Rule 12(b)(2) are not well-taken and are **DENIED.**

**IT IS SO ORDERED**

Date January 28, 2016

s/Sandra S. Beckwith
Sandra S. Beckwith
Senior United States District Judge